UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HANSEN DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:18-CV-391-PPS-MGG |
| | ) |
| ANDREW M. SAUL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Hansen Davis, seeks review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income. The application was filed on March 16, 2015, and alleged a disability date of October 26, 2011. The ALJ found Davis had the severe impairments of hypertension, diabetes, and "amputation of part of his right toe."[1] [Tr. 13.][2] But the ALJ nonetheless determined Davis had the residual functional capacity (RFC) to perform sedentary work, except he could occasionally climb ramps and stairs, but never ladders, ropes, and stairs. [Tr. 14.]

On March 28, 2019, I entered an order referring this matter to Magistrate Judge Michael G. Gotsch, Sr. for Report and Recommendation pursuant to 28 U.S.C. § 636(b)

---

[1] To clarify, Davis had his *left* big toe amputated on July 15, 2016. Davis also testified during the ALJ hearing that he had a previous surgery on his *right* great toe, and Dr. Lacey stated Davis had multiple amputations on both feet. [Tr. 398, 730, 789.]

[2] Citations to the record will be indicated as "Tr. __" and indicate the pagination stamped at the bottom right of each page of the record (found at DE 16).

and this Court's General Order 2018-14A. [DE 19.] Judge Gotsch issued an 18-page comprehensive Report and Recommendation on February 14, 2020, finding that none of Davis's three arguments warranted a remand, and recommending that the Commissioner's decision be affirmed. [DE 32.] Davis timely filed an objection on February 28, 2020 [DE 33], contending the ALJ: (1) erred in evaluating the opinion evidence of his treating physicians and caused an "evidentiary gap"; and (2) erred in evaluating Davis's subjective symptoms. While these arguments were fully analyzed by Judge Gotsch, I respectfully disagree with him on how the ALJ dealt with the opinions of the treating physicians. Therefore, I will reject that part of the Report and Recommendation, and remand this case.

## Discussion

When a party makes objections to a magistrate judge's recommendations, "[t]he district court is required to conduct a *de novo* determination of those portions of the magistrate judge's report and recommendations to which objections have been filed." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). "[I]f following a review of the record the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Goffman*, 59 F.3d at 671.

2

Davis contends that the ALJ improperly gave too much weight to the Consultative Examination ("CE") by Dr. R. Jao, while improperly downplaying the opinions of three of Davis's treating physicians. I agree that the ALJ discounted the weight given to Davis's three treating physicians without providing good reasons or substantial evidence for doing so.

Let's begin by giving a quick time table of the relevant events in this case, because the timing is troubling to me. The CE (to which the ALJ repeatedly cites when discounting the opinions of the treating physicians), occurred on September 11, 2015. Dr. Jao noted no amputation to the lower extremities, that Davis had full lower extremity strength, full pulses, intact sensation, a normal gait, he could walk without difficulty, had no assistive device use, and had intact sensation. [Tr. 718-20.]

Almost a full year after the CE, and following pain and infections, on July 15, 2016, Davis underwent an amputation of the left foot great toe at the first metatarsophalangeal joint with flexor release of the left foot second digit. [Tr. 789.] It is true, as the ALJ noted, that a hospital record stated that Davis was "doing well after his toe was amputated 1 day ago." [Tr. 15, 794.] It is unclear whether this note meant that Davis was doing well only relative to the surgery itself. What causes me concern is the fact that the ALJ failed to acknowledge that Davis had many difficulties after the surgery which caused him to remain in the hospital for *nine days*. [Tr. 794.]

As noted above, the opinions of Davis's treating physicians came after the CE and after Davis's toe amputation: First, podiatrist Dr. Lacey gave two medical source

3

statements on November 18, 2016 and May 18, 2017, and found Davis could only conduct less than sedentary work and would have to miss more than five days of work each month, and explained that Davis had poor circulation, diabetic neuropathy, and multiple amputations on both feet; second, Dr. Richardson wrote a letter dated May 24, 2017 and concluded that Davis needs to use an assistive device to walk; and third, Dr. Chacko, wrote a letter dated May 25, 2017, and concluded Davis had been unable to perform any work duties since beginning care with him on March 31, 2017, but also noted that Davis's treatment was ongoing and a post-treatment assessment of Davis's physical ability to work would be made. [Tr. 730, 915, 925, 926.] The ALJ gave "little weight" to all three of the treating physicians' opinions. [Tr. 16-17.]

Judge Gotsch correctly noted the framework for analyzing a treating source's medical opinion. [DE 32 at 8.][3] But I arrive at a different conclusion and find the ALJ did not properly consider the treating sources' medical opinions. Both the regulations and good sense require ALJs to give more weight to opinions from treating medical sources because of their greater familiarity with the claimant's conditions and circumstances. *See* 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence

---

[3] The treating physician rule was abrogated for claims filed after March 27, 2017, and eliminates the "controlling weight instruction." *McFadden v. Berryhill*, No. 17-1597, 2018 WL 317282, at *3 n.1 (7th Cir. Jan. 8, 2018). However, because Davis filed his claim in March 2015, the treating physician rule is still in effect for Davis's claims.

4

in the record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); s*ee also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). An ALJ is of course free to discount the treating physician's opinion, but he must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence. SSR 96-2p at *5, 1996 WL 374188 (July 2, 1996); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

Here, the ALJ simply did not provide good reasons or substantial supporting evidence about why he largely rejected all three of the treating physicians' opinions. Let's look at the ALJ's analysis for each opinion.

Regarding the first treating physician, the podiatrist Dr. Lacey, the ALJ stated:

> I give little weight to the opinion of Michael Lacey, D.P.M., who opined the claimant could engage in less than sedentary work while missing more than five days of work per month (Ex. B5F; B8F). While Dr. Lacey has treated the claimant, the degree of limitation here is not supported by the objective record, including a minimal post-surgical record, in which the claimant was noted to do well post-amputation, had full pulses, was in no acute distress, and there were indications of medication non-compliance, as well as a consultative examination that showed good mobility, full strength and sensation, intact deep tendon reflexes, and intact skin without muscle atrophy. While these findings, taking all evidence in the light most favorable to the claimant, does [sic] support a limitation to the sedentary exertional level, the time off task limitations, and the degree of non-exertional limitations, are not supported.

5

[Tr. 16-17.] The two main pieces of evidence the ALJ used to discount Dr. Lacey's opinion are: 1) the hospital note that Davis was "doing well" one day after his surgery, and 2) the CE, which occurred more than a year earlier.

To the extent the ALJ notes that Davis was doing well one day after the amputation of his left toe, he has "cherry-picked" this notation out of the medical records. Of course, an ALJ may not simply ignore entire lines of contrary evidence, and "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). As I referenced above, Davis remained in the hospital for 9 more days. On July 23, 2016 (when he was still in the hospital), it was noted that he had severe PVD (peripheral vascular disease) and "now with bone involvement, osteomyelitis," he was unsteady with crutches and having a difficult time maintaining weight bearing status, and when he left the hospital, he needed additional physical therapy. [880, 894.] During physical therapy, Davis needed supervision from going from standing to sitting, and was working on his gait, but still remained slightly unsteady. [Tr. 909-10.] Davis continued to have more problems, including a hospitalization resulting in an open irrigation and incisional debridement of the left hip, then a rehabilitation stay with a note of decreased function on movement of both upper and lower extremities, and he began using a rolling walker. [Tr. 732-42.] In sum, it seems to me that it is misleading to pick one notation from the day after Davis's surgery which says that he was "doing well" while ignoring the many other notations showing severe complications thereafter.

6

Additionally, because the CE predated the amputation of Davis's left toe by more than a year, that also does not seem to be a "good reason" to discount Dr. Lacey's opinion - which is an opinion of the treating podiatrist and post-dates the amputation. Moreover, the Seventh Circuit is clear that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

The ALJ's reference to Davis being in "no acute distress" and having medication non-compliance seems to be a reference to an inpatient hospital report from March 29, 2017 (to which the ALJ refers earlier in his opinion at Tr. 15). Although the note says under "general appearance" that there is "no distress," [Tr. 736] just four pages earlier, in the same hospital visit records, the doctor notes:

> Pt. was directly admitted to the hospital after having abnormal labs and a weight loss of 20 lbs over the past month. Pt states that in the past month he hasn't been checking his sugars or taking his insulin correctly secondary to pain in his left leg. He states that the pain became progressively worse over a relatively short period of time. Pt notes that he didn't come into the office or ER but his pain was so great, it was difficult for him to move. . . . Pt has palpable pain in his hip and thigh. He cannot move leg without having pain. Pt denies any trauma or injury and had XRay which was negative. Pt states that the pain is 10/10.

[Tr. 732.] So once again, it seems the ALJ cherry-picked evidence in evaluating Dr. Lacey's opinions when he noted that Davis "was in no acute distress," but failed to acknowledge the evidence showing Davis was in the hospital *because of severe pain*.

7

The ALJ also gave "little weight" to the opinion of Dr. Lisa Richardson, who opined:

> [T]he claimant requires an assistive device to ambulate (Ex. B10F). While Dr. Richardson has treated the claimant, the opinion is given particularly in relation to his hip, in May 2017, which is noted to be given while treatment was ongoing. It is not, however, supported by the overarching record, including to do [sic] well post-amputation, had full pulses, was in no acute distress, and there were indications of medication non-compliance, as well as a consultative examination that showed good mobility, full strength and sensation, intact deep tendon reflexes, and intact skin without muscle atrophy.

[Tr. 17.] This analysis suffers from similar problems, as the ALJ again relies on the one note from the hospital that Davis was "doing well" a day after amputation, the hospital records from 2017 stating there was "no distress" (even though he was in the hospital for severe pain to his hip and thigh), and the out of date CE. In addition, I'm not sure why the ALJ seems to discount Dr. Richardson's opinion that Davis requires an assistive device to walk because the opinion is given "particularly in relation to his hip." [Tr. 17.] Regardless of how long the hip issues were expected to last, there is evidence in the record that in addition to the problems with his feet, Davis also suffered from hip issues that required an open irrigation and incisional debridement. [Tr. 732-42.] And in all events, Dr. Richardson also treated Davis at the hospital for his toe amputation as well his hip issues. [Tr. 820.]

Finally, the ALJ also gave "little weight" to the opinion of Dr. Siju Chacko, who:

> opined the claimant is unable to perform work duties (Ex. B11F). At the outset, the ability to work is a finding reserved to the Commissioner. Additionally, the degree of limitation

8

> considered by this opinion is inconsistent with the records as a whole, including a minimal post-surgical record, in which the claimant was noted to do well post-amputation, had full pulses, was in no acute distress, and there were indications of medication non-compliance, as well as a consultative examination that showed good mobility, full strength and sensation, intact deep tendon reflexes, and intact skin without muscle atrophy.

[Tr. 17.] Once again, in rote fashion, the ALJ hangs his hat on the note in the hospital record that Davis was "doing well" one day after amputation, the hospital note that he was in no distress, and the pre-amputation CE. And as I explained before, I don't think these are sound reasons to discount a treating physician's opinion, let alone three of them. Even assuming there were indications of medication non-compliance, Dr. Chacko states in his letter that Davis is "currently under [his] care for the treatment of MSSA/Sepsis. . . . he is currently taking IV antibiotics." [Tr. 926.] Yet the indication of noncompliance was that Davis had not been checking his sugars or taking his medication secondary to the pain in his leg [Tr. 732] which is seemingly unrelated to the issues being treated by Dr. Chacko.

In sum, in looking at the ALJ's dismissal of all three opinions of the treating physicians, instead of providing "good reasons" for the rejection of the treating doctors in this case, the ALJ made reference to a fleeting citation one day after the toe amputation, an outdated CE by a non-treating physician, and a notation during a hospital visit that Davis appeared to be in no distress. I just don't think these are good enough reasons to disregard the contrary opinion of three treating doctors. *See Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018) (the ALJ needed to offer a good reason for

9

disregarding the claimant's treating physician); *Stacy A. v. Berryhill*, No. 17 C 6581, 2019 WL 1746207, at *5 (N.D. Ill. Apr. 18, 2019) (quotation omitted) ("If an ALJ discounts a treating physician's opinion because it is inconsistent with the evidence, she must explain the inconsistency.").

Additionally, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors). "[A]n ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (citing *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008)).

In this case, the ALJ did not explain if or how he considered *any* of the relevant treating physician factors. Dr. Lacey was Davis's podiatrist and began treating him in May 2016, which was about a year before Dr. Lacey gave his second RFC Medical Source Statement. [Tr. 912, 915.] While the ALJ acknowledged that Dr. Lacey "has treated the claimant," Dr. Lacey's treatment history was ignored by the ALJ, as well as the details, frequency, and nature of treatment by Dr. Lacey, and the fact that Dr. Lacey was a specialist in podiatry. [Tr. 16.] Dr. Lacey's opinions seem especially on point and

10

important since Davis suffered from severe issues with his feet, but the ALJ made no such acknowledgment. The same goes for the other two treating physicians - the ALJ makes no comment whatsoever on what type of doctors they are, how long they treated Davis, what was the extent, frequency, and nature of their treatment, and whether their opinions were supported by looking at the entire record (not just one day after surgery, one note during a hospital stay, and an outdated CE).

All of this is not harmless error. For example, Dr. Lacey limited lifting and carrying to less than five pounds, only up to 5% of the day. [Tr. 727-28.] When the ALJ asked the VE if that would preclude the jobs he had provided in hypothetical numbers 2 and 3, the VE answered yes. [Tr. 424.] And when asked if a person is absent for five days or more per month (which was also Dr. Lacey's opinion about Davis), the VE answered that such a person could not be competitively employed. [*Id.*] A different weighing of the opinions of Dr. Lacey, Dr. Richardson, and Dr. Chacko could therefore result in a different RFC, including the use of an assistive device to walk, and it could impact whether Davis could be employed at all due to probable absences.

In sum, on remand, the ALJ should reevaluate the opinions of treating physicians Dr. Lacey, Dr. Richardson, and Dr. Chacko. If the ALJ again determines that their opinions are not entitled to controlling weight, the ALJ should address the various factors set forth in 20 C.F.R. § 416.927 in assessing the weight to afford those opinions.

**Conclusion**

For the reasons set forth above on the one issue discussed, Davis's Objection to the Report and Recommendation [DE 33] is SUSTAINED. The Magistrate Report and Recommendation [DE 32] is REJECTED on the issue of the medical opinion evidence. Given the court's ruling on the medical opinion evidence, the remaining issue need not be discussed but may be raised directly on remand with the ALJ. The Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: March 18, 2020.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**